UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| CITY OF CLEVELAND, | Case No.: 1:04CV1590 |
| Plaintiff, | JUDGE ANN ALDRICH |
| v. | |
| WOODHILL SUPPLY, INC., ARNOLD KAUFMAN, MICHAEL SEMLAR, JAMES STALLWORTH, KENNETH MCNEIL, and NORMAN GORE, | |
| Defendants. | MEMORANDUM AND ORDER |

The City brings this action to recover for losses it allegedly suffered as a result of wrongdoing by employees of its Water Division and employees and officers of Woodhill Supply, Inc. ("Woodhill"). Woodhill and its president, Arnold Kaufman, move for judgment on the pleadings as to counts one, two, six and ten, the City's claims under the federal and Ohio RICO statutes and, under Ohio common law, breach of contract and unjust enrichment. The City filed an opposition brief and the movants filed a reply. For the reasons that follow, the court grants Woodhill and Kaufman judgment on the pleadings as to count one, the federal RICO claim. Because that was the City's only federal claim against these defendants, the court declines to exercise supplemental jurisdiction over the City's other claims against them, and dismisses the case.

## I. BACKGROUND

The City's Water Division, which maintains the sewer and pipe infrastructure, operates a warehouse on Harvard Road. Defendants Gore, McNeil and Stallworth worked in that warehouse as general storekeeper, head storekeeper, and warehouse manager, respectively (collectively "the City employees"). Defendant Woodhill is a plumbing supply company that contracted with the City.

From 1998 to 2003 Woodhill Supply, Kaufman, and Woodhill salesman Michael Semlar (collectively "Woodhill") allegedly engaged in a conspiracy with the City employees. Woodhill provided home appliances to the City employees, who reciprocated by helping Woodhill defraud the City. Specifically, the City employees helped Woodhill invoice the City for goods that were neither ordered nor delivered; invoiced the City for goods at prices above those authorized by any existing contract; made unauthorized purchases from Woodhill at above-market prices; and substituted goods of lesser quality for those ordered and paid for by the City. *See* Comp. ¶¶ 17-19.

In May and June 2004 four of the individual defendants – Kaufman, Semlar, Stallworth and McNeil – were charged in this court with violating 18 U.S.C. § 371 and § 1951 (conspiracy to violate the Hobbs Act by bribing public officials and money laundering). *See US v. Kaufman and Semlar*, Dkt. No. 1:2004CR259 (N.D. Ohio); *US v. Stallworth*, Dkt. No. 1:2004CR262 (N.D. Ohio); *US v. McNeil*, Dkt. No. 1:2004CR263 (N.D. Ohio). All four pled guilty and were sentenced by Judge Gaughn. *See* Comp. ¶¶ 20-27. Apparently City employee Gore has not been charged.

The City asserts a federal civil RICO claim, an Ohio civil RICO claim, and eight Ohio common law claims against each of the defendants: fraud, bribery, conversion, breach of contract, breach of the covenant of good faith and fair dealing, aiding and abetting, negligent misrepresentation, and unjust

enrichment. The City seeks $1.5 million in compensatory damages, $4.5 million in punitive damages, federal civil RICO damages of $4.5 million, Ohio civil RICO damages of $4.5 million, and attorneys fees. The City also seeks an accounting of all overcharges and improperly diverted funds. All defendants filed an answer except City employee Gore, who attended the case management conference but apparently has never been served with the complaint.

## II. LEGAL STANDARDS

### A. Motion for Judgment on the Pleadings (for Failure to State a Claim)

Federal Rule of Civil Procedure 12(c) provides, "After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Such a motion is addressed under the same standard as a motion to dismiss for failure to state a claim under Rule 12(b)(6). *See Morgan v. Church's Fried Chicken*, 829 F.2d 10, 11 (6th Cir. 1987). Namely, the court "must construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claim that would entitle him to relief." *Penny/Ohlmann/Nieman v. Miami Valley Pension Corp.*, 399 F.3d 692, 697 (6th Cir. 2005). However, the court need not accept a legal conclusion couched as a factual allegation. *See Papasain v. Allain*, 478 U.S. 265, 286 (1986).

### B. Civil Liability under the Federal RICO Act

The federal Racketeer Influenced and Corrupt Organizations Act ("RICO") Act is codified at 18 U.S.C. § 1961 *et seq*. The City alleges that Woodhill and Kaufman violated 18 U.S.C. § 1962, which

-3-

provides, "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." *See* Comp. ¶ 37.  To establish a RICO violation, the City must prove that (1) there were two or more predicate offenses, i.e., racketeering activities, (2) there was an "enterprise", (3) there was a nexus between the pattern of racketeering activity and the enterprise, and (4) the first three factors caused an injury to business or property.  *See Frank v. D'Ambrosi*, 4 F.3d 1378, 1385 (6th Cir. 1993).

### III. DISCUSSION

**A.     The City Does Not State a Federal RICO Claim Against Woodhill and Kaufman**

Woodhill and Kaufman do not challenge the City's allegation that there were two or more predicate offenses constituted racketeering activities as defined by RICO, namely their payment of bribes and conspiracy to pay bribes to the City employees. *See* Comp. ¶ 31; Ans. Of Woodhill and Kaufman ("Ans.") ¶ 31; 18 U.S.C. § 1961(1)(A and B) (defining "racketeering activity"); 18 U.S.C. § 1961(5) (defining "pattern of racketeering activity").  But Woodhill and Kaufman contend that the City's allegations cannot establish the existence of the requisite "enterprise," as that term is defined by the RICO statute and interpreted in case law. *See* Comp. ¶¶ 34-36; Ans. ¶¶ 34-36.

Section 1961(4) defines enterprise as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." The Supreme Court further defines it as a "group of persons associated together for a common purpose of engaging in a course of conduct." *US v. Turkette*, 452 U.S. 576, 583 (1981).

The City cannot name a legal entity such as Woodhill Supply as the enterprise, because "a corporation cannot be both the 'enterprise' and the 'person' conducting or participating in the affairs of that enterprise." *Begala v. PNC Bank, Ohio* 215 F.3d 776, 781 (7th Cir.) (citation omitted), *vac'd in part o.g.*, 531 U.S. 1033 (2000). Therefore the City must establish the existence of an association-in-fact enterprise. To do so, the City must prove that (1) the associated persons formed an ongoing organization, formal or informal, (2) the associated persons functioned as a continuing unit, and (3) *the organization was separate from the pattern of racketeering activity in which it engaged. See VanDenBroeck v. CommonPoint Mortgage Co.*, 210 F.3d 696, 699 (6th Cir. 2000) (citation omitted).[1]

These requirements are designed to keep simple conspiracies beyond the purview of RICO. "[S]imply conspiring to commit a fraud is not enough to trigger the Act if the parties are not organized in a fashion that would enable them to function as a racketeering organization *for other purposes*." *VanDenBroeck*, 210 F.3d at 699. Moreover, since "diverse parties customarily act for their own gain or benefit in commercial relationships," a complaint founded on commercial relationships between the alleged components of the enterprise – like the City Water Division's relationship with Woodhill – should plead facts to "dispel the notion that the different parties entered into [the] agreements ... for their own gain or benefit." *Id.*

---

[1] *Accord US v. Fernandez*, 388 F.3d 1199, 1223 (9th Cir. 2004) ("A group whose members collectively engage in an illegal act, in-and-of-itself, does not constitute an 'enterprise' for the purposes of RICO") (citation omitted), *cert. denied*, __ U.S. __, 125 S.Ct. 1964, 2278, 2286 (2005); *Fitzgerald v. Chrysler Corp.*, 116 F.3d 225, 228 (7th Cir. 1997); *Managed Care Lit.*, 298 F. Supp. 2d 1259, 1274 (S.D. Fla. 2003).

Woodhill and Kaufman's motion does not address whether they and the other defendants "formed an ongoing organization," and for purposes of this motion only, the court assumes *arguendo* that they did. *Contrast American Eagle Credit Corp. v. Gaskins*, 920 F.2d 352 (6th Cir. 1990) (alleged acts of mail fraud, which took place over a six-month period without the threat of continuing criminal activity, did not constitute a "pattern" of racketeering activity).

Rather, Woodhill and Kaufman contend that the City's allegations cannot show that they "functioned as a continuing unit" and that their organization was separate from the pattern of racketeering activity. *See* Mot. at 8-9. The court finds that even if the City proves all the facts that it has alleged, it cannot establish that Woodhill, Kaufman and the other defendants constituted an organization separate from the instant pattern of racketeering activities.

In support of its assertion that Woodhill and Kaufman formed an "enterprise" with other defendants, the City states,

> The "enterprise" functions as a continuing unit, with each member having a specific role. Without each member, it would have been extremely difficult if not impossible for the Woodhill Water Enterprise to carry out its purpose. It is, therefore, a distinct entity, separate from the predicate acts that it performed.

City's Opp'n at 10 (citing *Turkette*, 452 U.S. 576, 583 (1983)). But the fact that each member of the conspiracy had a different role, or the fact that all members of the conspiracy were necessary to its success, has no bearing on whether they constituted an organization separate from their pattern of racketeering activity. Conversely, it would make little sense to say that conspirators could not form a RICO enterprise if there was overlap between some members' roles, or if the conspiracy might have succeeded without the participation of one conspirator or another.

-6-

In another futile attempt to show that the defendants constituted an enterprise, the City states,

> Here, the Woodhill Water Enterprise consisted of the Woodhill Management Defendants who gave bribes to City officials in exchange for City business and corporate profits. The Woodhill Management Defendants also ordered non-plumbing goods (not the business of Woodhill) to bribe City officials and build in "extra profit."

City's Opp'n at 11. But whether or not Woodhill customarily sold non-plumbing goods does not change the fact that it conspired with the City employees only as a result of, and as a part of, its vending relationship with the Water Division. *See Rivera v. AT&T Corp.*, 141 F. Supp. 2d 719, 726 (S.D. Tex. 2001) (dismissing claim that cable TV companies violated RICO by charging illegal fees; plaintiffs did not allege facts showing an enterprise, as their "own allegations demonstrate that the allegedly usurious acts were committed as part of each corporation's cable business") (citation omitted), *aff'd o.b.*, 34 Fed. Appx. 962, 2002 WL 663707 (5th Cir. Mar. 25, 2002).[2]

For this reason, the fact that Woodhill used some orders of non-plumbing goods as part of the conspiracy does not render the conspiracy a RICO enterprise, for "[i]t is not enough to establish that a defendant corporation through its agents committed the predicate acts in the conduct of its own business." *Javitch v. Capwill*, 284 F. Supp. 2d 848, 857 (N.D. Ohio 2003) (quoting *Whelan v. Winchester Production Co.*, 319 F.3d 225, 229 (5th Cir. 2003) (citation omitted)). *See, e.g., 800537 Ontario, Inc. v. Auto Enterprises*, 113 F. Supp. 2d 1116, 1123 (E.D. Mich. 2000) (finding that two importers did not participate in "any kind of hierarchy beyond their contractual relationship"). Moreover, "[t]here is no allegation that there existed some subset of actors that carried out the illegal collections that was distinct

---

[2] *Contrast Chen v. Mayflower Transit*, 159 F. Supp. 2d 1112, 1115 (N.D. Ill. 2001) (complaint could "fairly be read to allege that Mayflower and its local agents went beyond conducting the normal affairs of Mayflower....").

-7-

from the actors who carried out the legal ones. Thus there is no separate system of authority or decision-making apparatus other than the one that carried out the alleged racketeering activity." *Hansen v. Ticket Track*, 280 F. Supp. 2d 1196, 1206 (W.D. Wash. 2003).

Lastly, the City does not allege that the Woodhill defendants and the City employees "utilized a structure separate and apart from the predicate acts to distribute the proceeds of the [fraudulent] transactions." *Simon v. Value Behavioral Health*, 208 F.3d 1073, 1083-84 (citation omitted), *amended o.g.*, 234 F.3d 428 (9th Cir. 2000).

In short, the allegations in the City's complaint cannot support the conclusion that the Woodhill defendants and the other defendants formed a structure or organization beyond and distinct from the racketeering activities. *Contrast Hofstetter v. Fletcher*, 905 F.2d 897, 903 (6th Cir. 1988) (insurance agents constituted an ongoing enterprise when they formed an entity, separate from their insurance company, to induce people to buy insurance policies with false claims of tax advantages). "If the 'enterprise' is just a name for the fraudulent acts alleged, or for the agreement to commit these acts, then it is not an enterprise within the meaning of the statute." *Sears Roebuck & Co. v. Emerson Elec. Co.,* 2003 WL 60573, at *5 (N.D. Il.. Jan. 7, 2003). *See, e.g., Weerisinha v. Fori Automation*, 246 F.3d 678, 2000 WL 1875834, at *1 (9th Cir. Dec. 22, 2000) (even if defendants conspired to reduce the value of plaintiff's business and worked together to provide false documentation of transactions to justify the lower value, plaintiff failed to "allege that the defendants belonged to a structure or organization beyond those alleged racketeering activities").

**B.     Supplemental Jurisdiction over the State Law Claims Against Woodhill and Kaufman**

Congress has authorized a district court to decline supplemental jurisdiction when that court has already dismissed all claims over which it had original jurisdiction, *see* 28 U.S.C. § 1367(c), and the court has "broad discretion" to do so. *See Ernst v. Roberts*, 379 F.3d 373, 393 (6th Cir. 2004) (citation omitted), *reh'g en banc granted o.g.* (6th Cir. Nov. 17, 2004). Moreover, "the usual course is for the district court to dismiss the state-law claims without prejudice if all federal claims are disposed of by summary judgment" or similar motion. *Brandenburg v. Hsg. Auth. of Irvine*, 253 F.3d 891, 900 (6th Cir. 2001) (citing *UMWA v. Gibbs*, 383 U.S. 715, 726 (1966) ("If the federal claims are dismissed before trial ... the state claims should be dismissed as well."))[3]

The City is an Ohio municipal corporation, Kaufman is an Ohio resident, and Woodhill is incorporated in Ohio and maintains its principal place of business in Willoughby, Ohio. *See* Comp. ¶¶ 4, 13 and 15; Ans. ¶¶ 4, 13 and 15. In other words, the City and these defendants are all Ohio citizens. *See Bishop v. Pacific Employers Ins. Co.*, 88 Fed. Appx. 867, 870, 2004 WL 259224, at *2 n.3 (6th Cir. Feb. 10, 2004) (citing 28 U.S.C. § 1332(c)(1) (a corporation is deemed a citizen of the state of incorporation and the state where it has its principal place of business)). Absent diversity, there is no independent basis for this court to exercise jurisdiction over the City's state law claims against these defendants.

---

[3]     *See, e.g., Mayers v. Sedgwick Claims Mgmt. Servs.*, 101 Fed. Appx. 591, 593, 2004 WL 34561629, at *2 (6th Cir. June 10), *cert. denied*, __ U.S. __, 125 S.Ct. 442 (2004); *Bajorat v. Columbia-Breckenridge Dev. Corp.*, 944 F. Supp. 1371, 1383 (N.D. Ill. 1996) ("A district court must have good reason for retaining jurisdiction" over supplemental state law claims).

In its discretion, the court declines supplemental jurisdiction over the City's state law claims against Woodhill and Kaufman. This should not prejudice the City, as the statute of limitations for those claims is tolled during the pendency of this action "and for a period of thirty days after it is dismissed unless State law provides for a longer tolling period." 28 U.S.C. § 1367(d).[4]

## IV.  ORDER

For the foregoing reasons, the joint motion of Woodhill Supply and Arnold Kaufman for judgment on the pleadings [doc. no. 41] is granted.

Judgment is granted to Woodhill and Kaufman on count one, the City's federal RICO claim.

The court declines supplemental jurisdiction over the City's other claims. Counts Two through Ten are dismissed without prejudice.

This order is final and appealable.

IT IS SO ORDERED.

                                      s/Ann Aldrich
                                      ANN ALDRICH
                                      UNITED STATES DISTRICT JUDGE

Dated:         August 18, 2005

---

[4] While § 1367(d)'s tolling provision does not apply to suits against States, it does apply to suits against a State's political subdivisions. *See Spector v. Norwegian Cruise Line Ltd.*, __ U.S. __, 125 S.Ct. 2169, 2193 (2005) (citing *Jinks v. Richland Cty.*, 538 U.S. 456 (2003) (applying 1367(d) to a suit against a county)). *See, e.g., Johnson v. City of Detroit*, 319 F. Supp. 2d 756, 782 (E.D. Mich. 2004).